My name is Rob Lewis and I'm here on behalf of the Independent School District of Boise City. The issue you're faced with today is interpretation of an insurance policy and the endorsement called the rate guarantee. Counsel, I'd like to take a little procedural swipe here. You both agreed that the magistrate judge would hear the case, right? Correct. That does not mean that you consented to have him make a judgment on the summary judgments that you each submitted, right? I came across summary judgments, right? We did. Okay. So we can have both summary judgments denied and a trial required if neither side carries the clear burden of proof, right? I think so. I think that's correct. Is that what happened here? Pardon me? You have one position, they have another position. The magistrate judge thought the language was clear and that's a finding of fact or is it a question of law? It is a question of law, Your Honor. Under Idaho law, the interpretation of a policy is a question of law. Well then, if you concede that's a question of law, you're not going to submit the case to a jury when you go to trial, are you? We would on the issue of damages. We would not on the issue of coverage. At this point, the interpretation of the policy is a matter of law. Yeah, but if he finds no coverage, you're back here in the same posture you're in today, aren't you? He's already found no coverage. I know he did. You're sure that's a question of law? I am. Well, wait a minute. All right. Wait a minute, though. If the policy is ambiguous, then doesn't its meaning become a question of fact? It's a question of fact, but under Idaho law, the court determines that question. So we may have a question for the judge to determine. That's an actual question? In other words, one, the judge says this policy is ambiguous, and two, as a matter of fact, I find that the party's intent were X? We'd be back here again because if it's ambiguous, you interpret it in favor of the insured. Well, what's unreasonable about a trial judge making a finding of fact? And we're not here to hear findings of fact unless it's clearly erroneous. I miss your point, Your Honor. He's submitting the case to the magistrate judge, consenting to that process, having a question of fact raised. He makes a finding of fact that the policies can be canceled. And that's the end of the game, isn't it? What are you appealing as a matter of law? I'm appealing his interpretation of determination. Pulled out of the blue sky someplace or what? No. We are appealing as a matter of law his ruling on summary judgment, finding no question of fact. And neither party, I don't think, submitted a question of fact. It's simply interpretation of the policy based on its plain meaning. And you filed cross motions for summary judgment, which presumably presumes that there are no contested issues of material fact. There are no contested issues of fact. Well, the facts control the case, don't they? If you want to look at this insurance policy in its terms as a fact, yes. But the bottom line is what does this insurance policy say? How is it interpreted? That's not a question of fact. That's a question of law. But I guess what Judge Bezos is getting at is that in order to resolve the question of law, which is, is this insurance policy ambiguous, the magistrate obviously has to look at the language of the policy and decide whether or not the words create an ambiguity. True. But the Idaho case law says that that is a job for the court as a matter of law to interpret that policy. And so I guess I'm missing something from my perspective as an Idaho lawyer. We don't have judges determining ambiguity and making it a finding of fact. We could write an opinion and say the magistrate judge found this a matter of fact and is finding on the parties as follows. Right? And send it back for any question of law to be applied. Right? See, I'm missing that. We can apply the law here. Well, what's a factual issue? I'm sorry. I'm missing that. The only fact issue would be damage, depending on if you win, then it goes back to a trial to establish damage. If you lose, that's the end of the case. That's true. I think that's where we are. Wait a minute. Couldn't you win in this sense that the judge, I think, is this correct, the judge determined as a matter of law that there was no coverage? No. It wasn't. He determined it could not be canceled. This isn't really a coverage. Excuse me. Excuse me. Right. That the cancellation provision controls. Right? Correct. All right. Now, suppose we were to conclude that there's an ambiguity in the policy. Right? And, you know, you could read it either way, that that controls or, you know, the other provision controls. Then should we send it back for the magistrate judge to determine, you know, to resolve that ambiguity? I don't think so. Not under Idaho law. I think this court has the power under Idaho law to determine the meaning of the policy applying Idaho principles. And the meaning of the policy applying Idaho principles in the event there's an ambiguity is the meaning that favors the insured. So I guess I'm tripping over the idea that it's a factual question, Your Honor. We would just invoke or apply at that point the Idaho rules of insurance interpretation, which is whatever is most favorable to the insured is how that should be interpreted. Absolutely. I believe that's true. That's the case. That's not what the magistrate said. He said it's clear that the policy is cancelable under the terms of the contract. Hence, we're here on this appeal. We think he was wrong. Yeah, I understand that. And if that was a finding of fact, that was my question, is why should we send it back? I don't see it as a finding of fact. We're not going to make a finding of fact here. Pardon me? We're not going to do any fact finding here. That's not our business. We're not asking you to. Okay. We're asking you to construe this, interpret this policy as a matter of law. Mr. Lewis, since we took three quarters of your time on this issue, I'm going to give you an extra five minutes. Thank you. I don't think I'll need it. Go ahead. We're down to three minutes here, and I'm thinking, holy mackerel. You were looking a little blind. So anyway, interpretation. I think this court, seeing in diversity jurisdiction, applies Idaho law to this situation, and your job is to interpret the terms of this policy. You've got a de novo review of how the magistrate judge interpreted the terms of this policy. The policy has an endorsement called the rate guarantee endorsement that is at issue here, and that endorsement says, Courageous agrees to keep this policy in force. Those are the four words, five words we emphasize on our appeal, and that rates will not increase more than 3% per year for the 2002-2003, 2003-2004 policy years. First of all, keep this policy in force. The magistrate didn't look at that language in his decision. He pretty much glossed over it. We think it's the main term in the policy, and we believe that ordinary interpretation says this is non-cancelable for the 2002 and 2003 policy years. It was canceled for the 2002 policy year. That's our position as a breach of contract. But he interpreted it harmoniously, didn't he? He said, I think you can read these two clauses without creating a conflict, and his interpretation was that there was a 3% rate guarantee as long as basically the same coverage was provided, but the cancellation provision contained an exception that if for some reason the insurance company was unable to place some of the coverage, which is what happened in this case, then that would be an event that they could invoke in order to cancel the entire policy. Isn't that essentially what he ruled? He ruled that the rate guarantee was not an agreement for non-cancellation. It was simply an agreement to limit the increase in premiums to 3%. He overlooked, in my opinion and reading his opinion, he totally glossed over the language that says to keep this policy in force. Well, the contract could have been canceled if you'd had unusual claims, right? There's a provision in there that provides a loss ratio that if that formula is met, they could cancel for that reason. So it's not non-cancellable. The question is on what grounds should the policy be canceled? And so can you answer my question then? Am I reading Judge Williams' opinion correctly where he found harmony between the two provisions as I articulate it? I don't read it that way. And I don't want to say you're not reading it right, Your Honor. But I don't read his opinion that way. I don't see how he tried to harmonize the two endorsements because he did not give any meaning to keep the policy in force. Well, he did take into consideration the incident in, what was it, Colorado or someplace where they had a little shooting and students were killed and teachers were killed and some wild man gets loose in a school. And this was an insured event causing great loss. So what happens to reinsurance premiums go sky high if those insuring provisions stay in the contract? True. And you would not consent to taking them out, so they cancel. I think that one of the things that trips up Judge Williams' decision is the idea that the cancellation provision not only, and I don't see him reading it in harmony, but he says it basically prevails over the rate guarantee. He doesn't read into the rate guarantee the language or read from the rate guarantee endorsement the language that we're stressing to keep this policy in force. The way I read his opinion, I understood what he was saying to be that the rate is guaranteed no more than 3% a year. The policy is guaranteed in the sense that they won't cancel it until the, what is it, the four years have run. You get one renewal of two years after the initial two years. On the assumption that the insurer can obtain sufficient reinsurance in order to provide the same amount of coverage. And the problem here was if you look at the cancellation provision, the insurer tried to place reinsurance for the risk that Judge Beezer was referring to, which was triggered by the attacks at the Colorado School Plus 9-11, and the insurance market had changed. The reinsurance companies weren't writing. They didn't want that risk anymore. And so the insurer came back and said, sorry, we cannot provide the same level of coverage that we provided before. We just can't get the insurance. And for that reason, they invoked the cancellation provision. Now, what's unharmonious about reading those clauses in that way as he did? I don't think there's an exception in the rate guarantee endorsement that allows that. It's a separate endorsement that's a standard endorsement in the policy under Idaho law. The rate guarantee endorsement is very specific in that the policy will be kept in force. The only condition in that rate guarantee endorsement is the increase of premium, of exposure, of losses. The rate guarantee endorsement stands by itself and in its terms. You may harmonize it. I don't think Judge Williams did that. I think you overlooked the meaning of the terms, keep this policy in force. The premium differs. About $150,000 or $175,000, something like that. Yeah. It's huge. I know. And this is a very important case for my client, Your Honor. And that's why we're here, obviously. It's important to us, too. The facts are unique. And the law is unique, too. I mean, one of the ways to harmonize these policies is to look at Idaho statutes and say, what can be allowed here? Well, we believe that the Idaho statutes require the standard termination or cancellation clause, as it's written. But on the other hand, allow insurers to agree to policies and terms that are more favorable to the insured. These aren't standard endorsements, are they? They're negotiated endorsements. The cancellation clause, Your Honor, is standard, required by statute. The rate guarantee endorsement is negotiated. Yeah. Correct. One is, one's not. And we believe that the negotiated endorsement trumps the standard one, frankly, under the statute. What is 41-1822, I believe. Mr. Lewis, as I understand your argument, you would read out subsection 5 under the cancellation and renewal provision, and it would have no meaning whatsoever for that they can cancel for one of the following reasons. Loss of reinsurance, which provided us with coverage for all or part of the risk insured. That's right. So we would not give any force to that at all. That's correct. It's a non-cancellable clause. But on the other hand, the other interpretation would read out the phrase keep in force. Correct. Right? Yeah. There's a conflict right there. You're exactly right, Your Honor. If you don't have any questions, I'm going to reserve the last one minute and 20 seconds I have here. Okay. Very good. Thank you very much. Thank you, Mr. Lewis. Mr. Sherman, can you enlighten us on the opposite point of view? Sure. May it please the Court, my name is Heath Sherman. I represent Courageous Insurance Company. The first issue presented by this Court had to do with the issue of summary judgment, questions of law and fact. There's no genuine issue of material fact here. We agree that the policy reads as it reads. We agree that there's no extrinsic evidence anywhere where the Court's going to need to interpret in coming to its conclusion. Well, let me ask this question. In other words, as Judge Tallman stated in his last question to your opponent, if we read the policy one way, you know, it does away with, in effect, it negates a portion of that, that Paragraph 5 or Part 5, right, about you can cancel if you can't get reinsurance. On the other hand, if you read it, I think, the way your opponent wants you, then it does away with the policy, keep this policy in force. It makes that language meaningless. So in resolving that conflict, you know, should one prevail over the other or can there be harm? Is that a question? If we find that makes the policy ambiguous, is the interpretation of the policy still a question of law? It is a question of law. And let me address it this way, Judge Tashima. We have the interpretation, and the law tells us you have to read contracts as a whole. You have to try. You cannot read certain provisions and exclude other provisions, make other provisions superfluous. This policy can, and Judge Williams did, read this policy in terms of a whole. We are not ignoring the term, agree to keep this policy in force. That phrase is not ignored. Judge Williams correctly determined that means the terms and conditions of the policy will remain in force, as Judge Talmadge stated. But they don't remain in force if you cancel the policy. Excuse me? The terms and conditions, by definition, don't remain in force if you cancel the policy. Well, it is always subject to cancellation under certain enumerated provisions. Well, that's what makes this keep this policy in force language meaningless. You can cancel it any time you want to. That's a very good point, Your Honor. And I think what you're addressing is the International Brotherhood case that was considered by the trial court and cited by my opponent in his brief, which is clearly distinguished here. This is not a policy under Idaho law. It's forbidden. We courageous could not cancel at any time or for any reason. I think that's a very important concern you have, because in the International Brotherhood case, you had an insurer that said, I want to increase the rates. The insurer said, no, I have a rate guarantee. And then the insurer came back and canceled the policy for the sole purpose of increasing the rate. It's doing exactly what you said. You actually had the same option, because if you couldn't get reinsurance, you could have really boosted the rate, right? I could not increase the rate. Above your guaranteed limit. It was a guarantee. I could not do that. Courageous could not do that. Courageous could not use this as a loophole. The International Brotherhood case was a very narrow set of facts. It had to do with an insurance provision with a broad cancellation provision. And what made that case also very important is that the insured specifically stated that it wanted a non-cancellable rate guarantee. We don't have that in this case here. We have an insured that wanted a rate guarantee, which it obtained. Under very narrow circumstances, as here, the world changed. That's why the Idaho statute allows for these types of changes. And that's why we were allowed to cancel. It was not done on a whim, Judge Tashima. We did not do it because we wanted to willy-nilly unilaterally increase the rate for no good reason. We did it because there was some world-changing events that the contract particularly allowed. I don't think anybody would doubt that you had a very good reason. I don't think there's any question about that. Also, one thing that Justice Thomas said to the school district's counsel, Mr. Lewis, you want us to ignore subsection 5 on the reinsurance. Well, following the analogy, they want us to completely ignore the cancellation provision as if it doesn't exist at all. This is not a non-cancellable policy. The cases that the school district cited in its brief were non-cancellable policies. It stated that very clearly. This is not one of those cases. Let me ask you, as this just occurred to me, do you think we ought to certify this question to the Idaho Supreme Court? To the? Idaho Supreme Court. I believe this is a case that you should affirm. It's a matter of interpreting the Idaho insurance policy, and there's no directly controlling precedent. It started out in the state court, and they agreed not to keep it there. Bumped it over to the federalists, and here we are. Yeah. What would your position be if the circumstance had been that your client tried to obtain reinsurance, but the rates that were quoted by the reinsurer were double or triple? In other words, there was still insurance available. Would your client have had to bear the risk of only being able to collect 3% more in premiums? I'd like to look directly at what the provision says, loss of or decrease. Just a minute. Which provision are you looking at? Looking at the cancellation of non-renewal provision. All right. That's fine. Sub 5. Loss of, which is here, or decrease in reinsurance, which provided us with coverage. I would venture to say that might be decrease in reinsurance. That probably would carry the day. Well, I'm not so sure. Decrease in reinsurance might mean the amount of reinsurance that would be provided. My hypothetical was we'll give you the same amount of coverage, $10 million, but it's going to cost you three times what we charged you, and you're not going to be able to pass that on to the insured under the clause that limits the premium increase to 3% annually. That might be a closer question, certainly. But the fact here, as I understand it, is that you couldn't obtain reinsurance at all for this particular type of risk. For this peril of terrorism, sure. So in summation, this is a very narrow set of facts here. The policy provisions can be read in harmony and should be read in harmony. For that reason, I would ask that the Court affirm the lower court's decision. Thank you. All right. Thank you very much. Mr. Sherman, Mr. Lewis, you have just a little bit of time remaining. Very little, Your Honor. I just want to highlight a couple things that came up during Mr. Sherman's argument. There's no fact in the record that says the school district wanted a rate guarantee. There's no facts in the record that are bearing on that issue. The rate guarantee language on the top of the endorsement was a phrase composed by the insurance company. It's a contract of adhesion. The school district bought this endorsement, and we think you should interpret it as a non-cancellation clause, and that's why we're here. There's no fact in the record saying they wanted a rate guarantee alone. Secondly... Excuse me. What do you think about certification? I have no problem with that. We filed in the state court. They removed it. We had no choice in that matter. It wasn't an agreement. Secondly, we believe that, to go back to the idea about whether you have a question of fact here or not, the City of Boise case at 878 P. 2nd, 750 is the case we rely on to state that it's this court's obligation to construe the policy and interpret it. It does not become a question of fact. It's a question of law. So with that, I'd just like to thank the court. It's my pleasure to appear before you. If you have any further questions, I'd be happy to address them, but thank you very much for your attention. Thank both counsel for your argument, and the case just argued is submitted.
judges: Beezer, Tashima, Tallman